WESTBROOK *et al. v.* CORNEIL.

(In Banc. Nov. 12, 1945.)

[23 So. (2d) 753. No. 35934.]

**W. Harold Cox** and **B. B. McClendon**, both of Jackson, for appellants.

120

Butler & Snow, of Jackson, for appellee.

Roberds, J., delivered the opinion of the court.

Corneil sued appellants and recovered a judgment for a broker's commission of five percent of the purchase price of certain kitchen and cafeteria equipment and fixtures sold by appellants to the Jones Construction Company, which concern was constructing a military camp at Camp Shelby, near Hattiesburg, Mississippi. Appellants contend on this appeal they are not liable, first, because the proof does not support the verdict of the jury adjudging liability, and, second, because the declaration is grounded on one cause of action and the proof shows an entirely different cause of action, if it shows any liability whatsoever.

On the first question, Corneil claims appellants expressly agreed to pay him five per cent of the purchase price of such equipment and fixtures as appellants might sell Jones Construction Company for kitchen and cafeteria

purposes. Appellants say they did not agree to pay Corneil anything. There was a direct conflict in the evidence upon that. The jury found that appellants did so agree and there is ample evidence to support that finding. Therefore, we are not at liberty to set aside the finding of the jury.

On the second question, the declaration sets out that Corneil, plaintiff below, was engaged in the business of a manufacturer's agent—that is, he would ascertain who desired to purchase goods and merchandise and would then contact the sellers thereof, and assist in arranging a purchase and sale for an agreed commission to him for his services, and that appellants knew him and the nature of his business; that on or about October 20, 1940, he learned that the Jones Construction Company desired to purchase equipment and fixtures for a kitchen and cafeteria at Camp Shelby, and that he knew that such equipment and fixtures were of the nature and kind manufactured and sold by appellants. The declaration then continues:

"2-a. That pursuant to the business of the plaintiff, he approached the defendants, and then and there made arrangements with the defendants that he would undertake to sell to the said J. A. Jones Construction Company said fixtures and equipment, and that in the event he was successful in so selling said equipment, the same would be furnished by the defendants, and it was then and there agreed by and between the plaintiff and the defendants, for his effort therein, in the event the equipment manufactured by the defendants was so sold, that the plaintiff should receive as his commission thereon and as his compensation therefor a sum equal to 5% of the selling price of said equipment, the same to be paid by the defendants to the plaintiff.

"3-a. That the plaintiff was successful in procuring said order for the defendants, and said equipment was sold by the defendants to the said J. A. Jones Construction Company, and said defendants received therefor as the purchase price the sum of $30, 581.00, the final payment

thereon having been made by the said J. A. Jones Construction Company to the defendants on or about February 1, 1941.

"4-a. That as a result of the contract between the defendants and the plaintiff, the plaintiff was entitled to receive as his commission on said sale the sum of $1,529.05. On January 20, 1941, the defendants paid to the plaintiff on said commission the sum of $100.00, leaving a balance due thereon of $1,429.05."

As to the proof, relating to the foregoing ground for recovery, Corneil testified that he had spent much time in and around Camp Shelby and knew the purchasing agent of Jones Construction Company, and that this agent inquired of him where he might purchase fixtures and equipment for a kitchen and cafeteria; that he, Corneil, replied he did not then have such equipment but thought he could make connection that night with some one who did have it for sale and who could furnish it; and would endeavor to do so and would notify Overcash, the purchasing agent; that from his room in a hotel at Hattiesburg he called Mr. Rondo Westbrook, one of the partners, at Jackson over the telephone; that Mr. Westbrook was ill and his wife answered the telephone and that Corneil told her to have Mr. Westbrook call him before 9 o'clock the next morning, at which time he was going back to the camp; that shortly thereafter that night Mr. Westbrook called him back over the telephone; that he told Westbrook of this prospect of sale to Jones Construction Company and "that I can swing the (deal) your way"; that he, Corneil, knew nothing of the prices and set-up of the articles to be sold and it would be necessary for appellants to have a man at Hattiesburg the next day; that "I will handle this deal for five percent," and that Westbrook said "All right"; that he would have a man there the next day familiar with the price and manner of installing such equipment, and it was agreed this other man would meet Corneil the next day at the hotel desk in Hattiesburg at 12 o'clock; that he, Corneil, went back to the camp the next morning and informed the purchasing

agent for Jones that he had made the contact and a man would be there that day to figure on it; that, as had been agreed over the telephone, a Mr. Dulaney, representative of appellants, came into the hotel promptly at noon that day; that he fully informed Mr. Dulaney of the situation and that afternoon carried Mr. Dulaney to the purchasing agent in his automobile and introduced him to such agent, who, after discussing the situation, informed them he then had only one set of specifications and would have to get up another. Mr. Dulaney returned to Jackson that night but came back the next day with Mr. Jack Westbrook, another partner in Westbrook Manufacturing Company; that he Corneil, met them at the hotel and went with them to Mr. Overcash and introduced Mr. Westbrook to Mr. Overcash. There then took place a general discussion of the sale and purchase of the equipment in his presence; that Overcash informed them he had another set of the plans and specifications which might be used by Mr. Dulaney and Mr. Westbrook in figuring their prices and that these gentlemen returned to the factory at Jackson with the plans and specifications; that within a few days Mr. Jack Westbrook and the superintendent of appellant's plant returned to Camp Shelby, went to the hospital in connection with which the cafeteria was to be used, inspected the building in which the equipment was to be installed and checked the plans with the proposed manner and location of installation of the fixtures and equipment; that after appellee went back to the purchasing agent with Mr. Dulaney and Mr. Westbrook he stepped out of the picture and had nothing else to do with it, and when asked ''That was the end of your activities,'' he replied ''Yes, sir, that was our agreement.'' He was further asked ''State whether or not you did everything that you agreed with Mr. Rondon Westbrook that you would do in connection with the order.'' ''A. I did.'' On cross-examination he was asked ''. . . so you didn't do anything actually except tell them about the job and introduce them to Mr. Overcash.'' ''A. That was our agreement.'' He further said that if appellants

had not agreed to pay him as he testified they did agree to do, he would have contacted other sellers and tried to make a similar arrangement with them.

Appellee obtained an instruction which grounded liability on his services as shown by his evidence, provided the jury found these to be the facts.

It should be added that shortly after the foregoing negotiations appellants, at different times, did sell and deliver to Jones Construction Company cafeteria equipment and fixtures of a total sale price of approximately $30,000, and on January 20, 1941, delivered to Corneil a check for $100, which appellants say was a gratuity, or expression of appreciation, and Corneil says was payment on account.

Appellants say the evidence failed entirely to establish liability as alleged in the declaration; that the acts performed, as shown by the evidence, in no respect come within the duties imposed upon appellee by the averments of the declaration; that the proof was an entire departure from the stated cause of action, and appellants cite a number of cases announcing, or supporting, the rule that in such case no recovery can be had. However, we do not think the rule is applicable to the circumstances of this case.

It will be noted that the declaration states, among other things, that appellee ''would undertake to sell . . . '' the property to Jones Construction Company. He did not actually make the sale but each effort and act of his, as shown in the proof, was a step to that end. His services as proven were not a departure from those contracted to be performed. The contract included them. Perhaps the most that can be said in that regard is that his efforts fell short of the undertaking measured by the literal and strict wording of the declaration. But the sale did take place. The parties themselves consummated it. It will be noted, too, the declaration states that the business of Corneil was to find out who wanted to buy and who wanted to sell and bring them together—that he was a commission broker, or a manufacturer's agent—and

that appellants knew that, and, consequently, the arrangement was made in the light of that knowledge. Too, it is shown that, in the nature of the transaction here, Corneil had done about all he could do; that the matter thereafter had to be carried forward and completed between the parties themselves.

But if there be a material variance between the declaration and the proof we do not think appellants are in position to now take advantage of it. No objection was made to the evidence when offered because of a material variance or departure from the declaration. The case was tried and completed without such objection. Section 1512, Code of 1942, reads: "A variance between the allegation in a pleading and the proof shall not be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits; and where it shall not be shown to the satisfaction of the court that the party has been so misled, and immediate amendment of the pleading may be made without costs, and without delaying the cause. If the party has been so actually misled, an amendment may be allowed on such terms as shall be just."

We do not think appellants were misled to their prejudice in the trial of the case here, first, because, as stated, the proven acts of Corneil, by a reasonable construction of all the allegations of the declaration and the circumstances surrounding the parties, come within such allegations, in our opinion, and, second, because Mr. Rondo Westbrook admitted having a conversation with Mr. Corneil, but said it was with reference to the sale of stoves and ranges and not cafeteria equipment, and denied he agreed to pay Corneil anything; so that the main issues in the case were whether the conversation which admittedly took place was with regard to the sale of stoves and ranges or cafeteria equipment and whether appellant agreed to pay appellee anything for his services. The declaration specified the nature of the articles and the agreement to pay. It will be noted, too, appellants never

objected to the evidence on the ground of surprise or prejudice during the trial. Had that been done, the trial court could have then ruled and dealt with the situation as fairness and justice might have required. Plaintiff then might properly have been permitted to amend his declaration, if needed, to conform to the proof. This Court has repeatedly held under Section 1512 that a variance between the cause of action stated and that shown by the proof can only be availed of by objection to the testimony, otherwise the contention will not be considered on appeal. Greer v. Bush, 57 Miss. 575; Kimbrough v. Ragsdale, 69 Miss. 674, 13 So. 830; Illinois Central Ry. Co. v. Cathey, 70 Miss. 332, 12 So. 253; Illinois Cent. Ry. Co. v. Price, 72 Miss. 862, 18 So. 415; Alabama & V. Ry. Co. v. Pounder, 82 Miss. 568, 35 So. 155; Jones v. Bunch (Miss.), 125 So. 551; Gower v. Strain, 169 Miss. 344, 145 So. 244. The variance must be material and it is not material unless it has actually misled the other party to his prejudice, and, if it is material, objection must be made so that the situation may then be dealt with by the court. It is not necessary for us to, and we do not, discuss and try to deduce the rules applicable to a situation where there is an entire departure in the proof from the grounds of liability set out in the declaration. We have said we do not think that is the case here.

We have examined the other errors assigned but do not think any of them require a reversal of this case.

Affirmed.