THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
v. SMITH

No. 42867 February 10, 1964 160 So. 2d 203

*Carlton & Henderson,* Sumner; *Lipscomb & Barksdale,*
*Watkins & Eager,* Jackson, for appellant.

*Breland & Whitten,* Sumner, for appellee.

KYLE, P. J.

This case is before us on appeal by The Mutual Life Insurance Company of New York, defendant in the

court below, from a judgment rendered by the Circuit Court of the Second Judicial District of Tallahatchie County in favor of Mrs. Leone L. Smith, plaintiff, in the principal amount of $5,000 with interest thereon from November 1, 1962, until paid, based upon the jury verdict in favor of the plaintiff in an action for the recovery of double indemnity on an insurance policy issued by the appellant to Whitney E. Smith, the appellee's husband, on September 3, 1929.

The record shows that the policy was a life and accident insurance policy for the sum of $5,000 in which the appellee, who was the wife of the insured, was named as beneficiary. The policy provided, among other things, as follows:

"Section 1. Double Indemnity.

"The Double Indemnity will be payable upon receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; * * *."

The declaration was filed on December 13, 1962. In her declaration the plaintiff alleged that Whitney E. Smith, the insured, on September 18, 1962, while the above mentioned policy of insurance was in full force and effect, became involved in an automobile accident as a result of which he received severe physical injuries to his abdomen and chest as evidenced by a large blue-black discoloration of his abdomen and chest; and that as a direct and proximate result of said injuries the insured became seriously and dangerously ill and died in the Greenwood-Leflore Hospital at Greenwood, Mississippi, on September 24, 1962. The plaintiff further alleged that the death of the said Whitney E. Smith

was a direct result of the bodily injury sustained by him as aforesaid, and that his death was effected solely through external violent, and accidental means received in said accident, independently and exclusively of all other causes, and which was evidenced by a visible contusion or wound on the decedent's abdomen and chest. The plaintiff further alleged that the defendant company had settled with the plaintiff for the $5,000 life insurance death benefit provided in the above mentioned policy, but the defendant company had wholly failed and refused to pay to the plaintiff the $5,000 double indemnity benefits as provided for the accidental death of the injured. The plaintiff therefore sued and demanded judgment against the defendant company for the sum of $5,000, together with interest thereon, from the date of the decedent's death.

The defendant in its answer admitted that the above mentioned policy had been issued to the decedent, and that on September 18, 1962, while the policy of insurance was in full force and effect, the decedent became involved in an automobile accident while he was driving his automobile. But the defendant denied that the decedent received severe physical injuries as alleged in the plaintiff's declaration. The defendant admitted that there was some discoloration of the injured's abdomen and shoulder as a result of minor contusion sustained by the decedent in said accident; but the defendant denied that, as a direct and proximate result of the injury sustained by the decedent in the automobile accident, he became seriously and dangerously ill and, as a result of his injuries, died in the Greenwood-Leflore Hospital. The defendant averred in its answer that the decedent's death did not result from the injuries sustained by him in the automobile accident, independently and exclusively of all other causes, but resulted either directly or indirectly from the disease or bodily infirmity with which the decedent had been afflicted several years prior to the accident.

The defendant admitted in its answer that it had been furnished a written opinion by Dr. E. M. Meek, the decedent's family physician, to the effect that the decedent died as the result of a ruptured aortic aneurysm and that the rupture of the aneurysm was caused by the automobile accident; but the defendant averred in its answer that, as the result of an individual investigation conducted by it, the defendant had become convinced that the disease or bodily injury suffered by the deceased for some years prior to the accident either wholly caused or contributed to the death of the deceased. The defendant averred that it had fully discharged its obligation of the above mentioned policy to the plaintiff and denied that it was liable to the plaintiff in the sum sued for.

The appellant has assigned and argued only one point as ground for reversal of the judgment of the lower court, and that is, that the lower court erred in refusing to grant the peremptory instruction requested by the appellant at the conclusion of all of the evidence.

We think there was no error in the court's refusal to grant the appellant's request for a directed verdict.

The record shows that the automobile accident referred to in the pleadings occurred on State Highway No. 32 west of the Town of Charleston sometime before the noon hour on Tuesday, September 18, 1962. The accident occurred when Mr. Whitney Smith, the insured, who was driving a Pontiac automobile, attempted to pass a Ford car as the driver of the Ford turned left across the paved highway to enter a private driveway. The Smith Pontiac, with its right front, struck the Ford about its left rear door. The left side of the Ford was caved in. The right front tire on the Pontiac was blown out and the wheel damaged. The bumper, fender, hood and general right front of the Pontiac were damaged. The highway patrolman arrived at the scene of the accident a few minutes after the accident occurred. The

patrolman testified that Mr. Smith was not rendered unconscious but was pale, nervous, clammy and in a slight state of shock when he reached him. The patrolman took him to his home.

Mrs. Smith, who had gone to Greenwood during the morning to have her car repaired, testified that when she saw her husband during the late afternoon, he was overwrought, disturbed and distressed. He had a rigor, shook, and lay on the bed. He complained of pain in his lower chest and upper abdomen a little to the left of his navel, and he was very nervous; but the next day, over his wife's objections, he attended a special meeting of the Levee Board in Clarksdale. He returned to his home during the early afternoon and went to bed immediately and complained of pain. During the night the pain in his chest and upper abdomen became more acute, and Dr. Lacey Biles was summoned to his bedside. Dr. Biles came, and when he examined the patient he found that he had fever and a blue spot four or five inches long and two or three inches wide on his lower chest and abdomen. Two days later the doctor found that Mr. Smith had developed pleurisy in the left chest.

For the next three days Mr. Smith continued to complain of pain in his stomach and chest and remained in bed much of the time, but carried on his business. Breathing continued to hurt him. He had no bowel movement. Dr. Biles called to see him twice during the three-day period, and found that he was suffering pain on breathing; and the doctor could hear a pleuritic rub. On Sunday night the pain in Mr. Smith's stomach and chest increased in severity and a hot pad was placed on his stomach and chest. By early morning the pain became still more acute, and Dr. Biles was again called. The doctor arrived at 6:30 A.M. He observed a marked decline in the patient's blood pressure, indicating dire distress. He called Dr. Edwin M. Meek at Greenwood and sent Mr. Smith to the hospital there. Mr. Smith

died a few minutes after arriving at the hospital. An autopsy was performed under the supervision of Dr. Daniel Trigg, a pathologist. The autopsy revealed that Mr. Smith had died as a result of a rupture of the descending aorta. The death certificate, which was signed by Dr. Meek, recited that the immediate cause of death was ruptured aortic aneurysm "due to an automobile accident."

The evidence offered on behalf of the plaintiff also showed that Whitney Smith was 66 years of age at the time of his death; that he was engaged in farming operations in Tallahatchie County, and supervised personally his farming operations; that he was president of the Yazoo-Mississippi Delta Levee Board, and attended the meetings regularly; that he was mentally alert and apparently in good physical condition for a man of his age up until the time of the accident which resulted in his death.

The medical testimony offered on behalf of the respective parties on the issue as to whether the insured died as a direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes, consisted mainly of the testimony of Dr. Edwin M. Meek and Dr. Ira B. Bright.

Dr. Edwin M. Meek, who was called to testify as a witness for the plaintiff, testified that he was engaged in the general practice of medicine and surgery in the City of Greenwood; that he was present when the autopsy was performed on Mr. Smith's body; that when the chest was opened bright blood gushed out showing that Mr. Smith had had a recent hemorrhage; that, on further examination of the tissues in the chest beneath the lungs and in the portion of the body back of the stomach and intestines, it was found that there was old blood, several days old, which indicated that Mr. Smith had had a hemorrhage previous to the recent hemorrhage

referred to above. The hemorrhage came from a tear in the aorta. It was the doctor's opinion that the automobile accident caused the rupture of Mr. Smith's aorta; that the aorta started to leaking, and then five or six days later he had a secondary hemorrhage. When blood gets in the tissue, it makes the tissue more friable. It loses its toughness. The doctor stated that an aneurysm could rupture spontaneously, but he did not think that this one did rupture spontaneously. There was no doubt in the doctor's mind that the automobile accident caused Mr. Smith's death. The accident caused his aorta to leak at first and then he had a secondary hemorrhage five or six days later. The doctor stated that he knew Mr. Smith personally; that he was quite active in business, social and public affairs; and he had no reason to believe that Mr. Smith would not have lived some years longer had it not been for the accident.

On cross-examination Dr. Meek stated that an aneurysm is a dilatation of a blood vessel. He stated that the aorta is probably the largest blood vessel in the body; that the aorta comes out at the top of the heart and goes up and then down on in behind a membrane into the retroperitoneal cavity. He stated that the rupture which resulted in Mr. Smith's death was in his chest behind the heart; that Mr. Smith died of exsanguination, that is to say, he bled to death in his body cavity. The doctor stated that he knew that Mr. Smith had aneurysm of the aorta, and it was his opinion that Mr. Smith's life expectancy was shortened because of the aneurysm; that the older a man gets the more likely he may suffer from such disease.

Dr. Ira B. Bright, testifying as a witness for the defendant, testified that he first saw Mr. Smith as a patient on April 9, 1954. He found a modest degree of high blood pressure at that time. The electrocardiogram made at that time was substantially normal. He had no murmurs in his heart or leaking valves that the doctor could

hear with a stethoscope. A chest X-ray made at that time revealed some widening of the aorta. The doctor saw Mr. Smith several times thereafter during the year 1954, and again on July 26, 1955. His blood pressure was somewhat higher than it had been. He was extremely restless and he could not sleep. The doctor gave him a new medicine and saw him again on August 18, 1955, and he was feeling better. The doctor saw Mr. Smith again on January 8, 1956, in his office. He seemed to be quite well at that time, but he continued to feel depressed. The doctor had a record of an examination of Mr. Smith made by him on April 10, 1959, which showed that Mr. Smith had developed an easily heard grade one aortic systolic murmer and a grade two aortic diastolic murmer indicating that he had some dilation or enlargement of the aortic range and the outflow tract of the left ventricle. At that time the doctor did not consider that he had a full grown aneurysm, but his aorta was widening. The doctor had a record of another examination made on May 5, 1961, and the radiologist report showed that the lower thoracic aorta was definitely larger than that shown on the film of February 14, 1957. The doctor stated that by 1961 it was plain to see that the lower or distal end of the aorta was assuming a fusiform aneurysmal shape. The last record entry the doctor had was dated July 10, 1962. The patient was feeling well most of the time. His blood pressure at that time was 160 over 70. His heart apex was not particularly enlarged. The aortic murmur was about the same. Dr. Bright did not see Mr. Smith again at any time after his examination of July 10, 1962. Dr. Bright was of the opinion, based upon the history given him of the accident of September 18, 1962, that the aneurysm contributed to Mr. Smith's death.

On cross-examination the doctor was asked the following questions and gave the following answers: ''Q. Would it be your opinion that the trauma to his chest,

which was given to you in the history, caused a series of events which led to his death six days later? A. Yes, I feel very strongly that it did. Q. And you feel further, I believe then Dr. Bright, that except for the automobile accident that Whitney Smith would be here with us to-day, wouldn't he? He would be alive? A. I feel that he would be. I feel like that he had had this thing for many years. It is true that it was enlarging, but I am equally convinced that the blow to his chest caused the tear in this aneurysm which resulted ultimately in his death. It triggered off a series of events that proved ultimately fatal to him.''

Dr.. Clyde Smith, radiologist, who made the series of X-ray films of the insured's chest, referred to in the. testimony of Dr. Bright, and Dr. Daniel Trigg, who performed the autopsy on the insured, referred to in the testimony of Dr. Meek, were also called to testify as witnesses on behalf of the appellant. The main points in their testimony have been covered in the summary of the testimony of Dr. Bright and the testimony of Dr. Meek, and it is not necessary that we undertake to summarize their testimony in this opinion.

In discussing the liability of the insurer where the accident and an existing bodily infirmity or disease combine to produce the disability or death in a case of this kind, the textwriter in 45 C.J.S., 812, Insurance, Section 776c, says:

''* * * The insurance company, however, may be held liable where the accident can be considered as the sole and proximate cause of death or disability, although disease or infirmity may have been present as a condition or secondary cause, or where the death is the reasonable and natural consequence of the injury, although disease may have supervened, or where the accident is the true cause of death or injury and the disease but the occasion. So, also, if death or disability results from the accident, the fact that but for weak-

ness or infirmities produced by former illness or disease it might not have been fatal or as severe will not prevent a recovery.

In the case of United States Fidelity & Guaranty Co. v. Hood (1920), 124 Miss. 548, 87 So. 115, the Court held that where a provision of an accident insurance policy insures against "the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means," and an accident happens which sets in action a latent and inactive disease, and death results from the accident accompanied by the effects of such disease, the accident is the proximate cause of the death. To avoid the policy in case of an accident accompanied by disease, the disease must proximately contribute to the death. The Court in its opinion in that case said:

"It appears clearly from the testimony of Dr. Gamble that the active cause of the death was the accident and that the accident precipitated the other troubles; that, had the accident not occurred, death would not have resulted for some years.

"* * *

"We think that, if the accident is the proximate cause of the death and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy."

In Metropolitan Life Insurance Co. v. Williams (1938), 180 Miss. 894, 178 So. 477, the Court held that, in an action on a certificate issued under a group accidental death policy which was applied for and delivered in Texas, under evidence that the insured, a railroad blacksmith, had a small hand abrasion at the end of the day's work, that had become wrinkled at the place of the abrasion and was bleeding, swelling, and turning blue, that the injury continued to grow worse although

continuously treated, that red streaks appeared on the insured's arm, necessitating amputation, and that the insured died a few days later, the question whether the injury was caused by "accidental means" was for the jury. The Court also held that under the evidence in that case, including medical testimony that septicemia arising from the accidental hand abrasion caused insured's death, and not diabetes, which did not require taking of insulin for one year prior to insured's death, and certificate of insured's attending physician stating that diabetes was a secondary cause of death, whether death resulted from the abrasion directly and independently of all other causes, as required by the policy, was for the jury.

In Standard Life Insurance Company v. Foster (1950), 210 Miss. 242, 49 So. 2d 391, the Court held that, under an industrial limited accident policy which insured "against the result of bodily injuries received during the time this policy is in force, and effected solely by external violent and accidental means", liability attached for the death of the insured if the death proximately resulted from an injury solely so effected; that the death need not be the result solely of the accidental injury, so long as it was a proximate result thereof, and provided the injury proximately causing death was effected solely by external violent and accidental means. ██ █ The burden of proof in the case that we have here was on the appellee to show not only that the insured suffered an accident, but also that the insured died as a direct result of bodily injury effected solely through external, violent and accidental means independently and exclusively of all other causes, and of which there was evidence by a visible contusion or wound on the exterior of the body. █ We think that the appellee met the burden of proof imposed upon her by law on both of those issues.

The case in our opinion is controlled by the opinion rendered by this Court in United States Fidelity and Guaranty Company v. Hood, supra.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Ethridge, McElroy, Rodgers and Patterson, JJ.,* concur.