ROBERTSON, Justice:
The Appellant, Zurich Insurance Company, has appealed from a judgment of the Circuit Court of the First Judicial District of Carroll County, Mississippi, in favor of Mrs. Annie F. Ruscoe.
Mrs. Ruscoe, the widow of Jenkins B. Ruscoe, sued the appellant on an insurance policy issued to her deceased husband. She alleged that his death resulted from an automobile accident, and she was therefore entitled to recover the death benefits of $10,000 under the terms of the policy. The jury returned a verdict for $10,000 in favor of the appellee, and the trial court entered judgment on this verdict.
The sole question involved is whether the jury was justified in returning a verdict for the appellee under the evidence as applied to the following provision of the insurance policy:
“1. Coverage A — Death Benefit. To pay the principal sum stated in the schedule in the event of the death of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon, or while entering into or alighting from, or through being struck by, an automobile, provided the death shall occur (1) within ninety days after the date of the accident, or (2) within fifty-two weeks after the date of the accident and during a period of continuous total disability of the insured for which weekly indemnity is payable under the Total Disability Coverage.”
The decedent, J. B. Ruscoe, was sixty-one years of age at the time of his death on February 13, 1965. He had suffered a heart attack in September, 1963, and was in the hospital for approximately forty days at that time. He returned to work as yardmaster for the C. & G. Railroad Company in Greenwood, and never missed a day from work until he was injured on February 11, 1965. His wife testified that he was a normally active man during this time, was never ill or disabled, never complained about his health; that in addition to his work, he continued his activities in the Moose Lodge, the Masons, the church, and the small band in which he played. She further testified that the only medicine he took was an anticoagulant pill once a day prescribed by Dr. Bright.
W. H. Blain, Jr., and George Pearce, fellow workers who saw him every day; Robert Gammill, a friend who saw him five or six times a week; and T. E. Austin, a friend who saw him almost every day, testified that Mr. Ruscoe was active, that his health was good in every respect, that he did not complain of any aches or pains, and that he took an active part in the work of *307 bis church, the Moose Lodge, the Masons, and the little band in which he played.
On February 11, 1965, after working a full day at the railroad yard, the decedent, after picking up William George as a passenger, left Greenwood in his Volkswagen automobile for Carrollton. William George testified that it was thundering and lightning, and was rainy and dark; that as they drove along toward Carrollton they were talking and Mr. Ruscoe was normal in every respect as he usually was.
Mr. Knox Bland, an eye witness, said that he was in a car following a truck going west toward Greenwood, that as the truck topped a hill it began to turn to the left in a wide arc to enter a side road. Mr. Ruscoe, seeing the truck in his lane of traffic, took the shoulder of the highway and the right end of the front bumper of the truck hit Ruscoe’s Volkswagen about dead center on the front end. Bland estimated Ruscoe’s speed at about 25 or 30 miles per hour and testified that the Volkswagen was hit with great force. He said that
“the front end was bent in bad, the inside, the steering wheel was bent, the dash was bent in on the passenger’s side, and the seat Mr. Ruscoe was sitting in had broken loose from its moorings and had turned back and he was laying back, and some of our men got out and held his head up, it was just laying back, he was unconscious, and they held his head up until the ambulance arrived.”
He said that it looked like the Volkswagen bounced back about four or five feet after the impact.
The passenger, William George, testified that he, George, was knocked unconscious, had several teeth knocked out, and hurt his shoulder and knees. The blow on his head was so severe that he remembers nothing about the accident till this good day.
Dr. John F. Lucas, Jr., testified that Mr. Ruscoe:
“had a cerebral concussion as evidenced by the fact that he was confused and could not recall the accident and he had abrasions about his hands and elbows, and he complained of a pain in his neck and head and soreness in the area of his shoulders and upper chest.”
Dr. Lucas described the concussion as a moderately severe one.
The ambulance took Ruscoe to the Greenwood Leflore Hospital where he died almost exactly 36 hours after the accident without ever regaining full consciousness and full use of his senses. He remained in an irrational, confused and agitated state of mind from the time of the accident until his death at about 4 a. m. on February 13, 1965. While in the hospital he complained constantly of the severe pain in his head.
Dr. Bright, the cardiologist, testified that Ruscoe’s heart condition at the time of the accident “was latent or quiescent. For the time being it was asleep, that it wasn’t in progress.” He further testified that when he saw Mr. Ruscoe on the afternoon of the accident “he was confused and he didn’t remember talking to me the next morning at all.”
Dr. Bright continued his testimony as follows:
“His heart sounded all right, hut he seemed to he agitated and excited and confused and somewhat disoriented, didn’t know exactly where he was all the time, and I believe that he died from another heart attack. Now the exact mode of dying or method of dying in these people, there can be a number of different modes or mechanisms of death involved in these people who die rather suddenly. I believe though that the excitement and the stress and the strain and the psychic trauma and the alarm reaction called out by the accident that he had, which I learned more about the following day, triggered off or set into progress a series of events that ultimately destroyed him *308 by causing him probably to go into' what we call a ventricular fibrillation-.”
“Q. Then as I understand your answer, in your opinion the cause of his death was this automobile accident ?”
“A. That is true. I believe that the accident was the cause of his death. If he hadn’t been in an accident, he may — I don’t know how nrnch longer he would have lived.” (emphasis added).
Dr. Lucas, a general practitioner and Ruscoe’s regular doctor, testified:
“Q. Doctor, do you recall approximately how many times you yourself saw Mr. Ruscoe while he was in the hospital on this occasion ?”
“A. I saw him at least four times.”
“Q. I will ask you this, it is a fact, isn’t it, Doctor, that you don’t actually as a doctor know what Mr. Ruscoe died from?”
“A. That is true.”
“Q. He could have died from a coronary thrombosis?”
“A. Yes.”
“Q. Or he could have died from hemorrhage of the brain ?”
“A. Yes.”
“Q. Caused by that headache, and it could have been either one of them?”
“A. It could have been.”
“Q. And you can’t absolutely say with certainty which one it was?”
“A. Not with absolute certainty.”
“Q. But I believe you have given it as your best judgment or opinion that he probably died from a coronary thrombosis?”
“A. That is correct.”
“Q. You can’t be certain about that, but that is your opinion? That’s right, isn’t it?”
“A. Yes, sir.”
“Q. Now if he died from the coronary thrombosis, then I will ask you if it isn’t a fact, or I will ask you if it is your opinion that that coronary thrombosis was probably caused from the effects of this accident and injuries that Mr. Ruscoe sustained in it?”
“A. Probably was.”
Dr. Lucas signed the death certificate and read from it, as follows:
“The cause of death, immediate cause of death was a heart attack, coronary thrombosis due to arteriosclerotic heart disease, and other significant conditions contributing to' death but not related to the terminal disease condition, cerebral concussion from auto accident.”
Both doctors testified that on the afternoon before his death, Mr. Ruscoe did not appear to be near death, and that no doctor or nurse saw him from 12 midnight until 4 a. m. when he died. Both doctors admitted that they do not know what changes in his condition occurred during the four hours that he was unattended.
Many years ago Mississippi charted its course as to the rule to' be applied in the construction of contractual stipulations contained in insurance policies. In this State the rule of proximate and remote causes has been consistently applied since the decision in the hallmark case of United States Fidelity and Guaranty Company v. Hood, 124 Miss, 548, 87 So. 115, 15 A.L.R. 605 (1920). Another rule was laid down in that case which has been adhered to by this Court over the years. It was succinctly stated by Judge Ethridge in the Hood case in these words:
“We think that, if the accident is the proximate cause of the death and sets *309 in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy.” 124 Miss, at 572, 87 So. at 119, 15 A.L.R. at 612.
Where there is evidence on which reasonable men might differ, the question of what was the proximate cause of death' is one for the jury to decide.
This Court has upheld jury verdicts for the Plaintiff, where the jury decided that the accident was the proximate cause of the death because it set in motion or caused to flare up or light up a latent or dormant disease, in the following cases: United States Fidelity & Guaranty Company v. Smith, 249 Miss. 873, 164 So.2d 462 (1964); Mutual Life Insurance Company of New York v. Smith, 248 Miss. 448, 160 So.2d 203 (1964); Mutual Life Insurance Company of New York v. Rather, 221 Miss. 527, 73 So.2d 163 (1954); Standard Life Insurance Company of the South v. Foster, 210 Miss. 242, 49 So.2d 391 (1950) and Metropolitan Life Insurance Company v. Williams, 180 Miss. 894, 178 So. 477 (1938).
The Fifth Circuit Court of Appeals upheld a jury verdict and applied the Mississippi Rule in the case of New York Life Insurance Company v. Schlatter, 203 F.2d 184 (1953).
The latest case applying this rule was Peerless Insurance Company v. Myers et al., Executors, 192 So.2d 437 (Miss.1966). The issue and the decision thereon were briefly summarized in the opinion, as follows :
“The issue is whether there was enough evidence to support a finding that a trip of an hour’s duration in a taxicab caused carbon monoxide poisoning of insured, which activated a latent heart condition and resulted in her death. We think there was, and thus affirm the judgment.” 192 So.2d at 438.
The verdict of the jury, and the judgment based thereon, in the case at bar is abundantly supported by the evidence, so we affirm the judgment of the lower court.
Affirmed.
GILLESPIE, P. J., and JONES, INZER and SMITH, JJ., concur.