**Deborah C. HOWARD, Plaintiff,**

v.

**GLEASON CORPORATION and Alliance Tool Corporation, Defendants.**

**No. CIV–89–0129T.**

United States District Court, W.D. New York.

July 19, 1989.

Woods, Oviatt, Gilman, Sturman, and Clarke, Rochester, N.Y., for plaintiff.

Nixon, Hargrave, Devans & Doyle (Eugene Ulterino, of counsel), Rochester, N.Y., for defendants.

## DECISION AND ORDER

TELESCA, Chief Judge.

## INTRODUCTION

The plaintiff, Deborah Howard, is the widow of a former Alliance Tool Corporation ("ATC") employee. She is the beneficiary of two life insurance policies issued on her husband's life while he was employed by ATC. Subsequent to his death, her claims for the proceeds of both life insurance policies were denied because the policies had lapsed after her husband failed to convert them from group policies to individual policies upon his termination from ATC. Subsequently she commenced an action in New York Supreme Court, Livingston County, against ATC and its parent corporation, Gleason Corporation ("Gleason") claiming that the defendants breached their duty to timely notify her husband of his option to convert the group life insurance policies to individual policies as required by New York Insurance Law § 4216(d).

The defendants removed the matter to this Court on the basis of Federal question jurisdiction, 28 U.S.C. § 1331, contending that this case is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff now moves to remand the action to State court on the basis that this Court lacks jurisdiction of the matter inasmuch as the ERISA does not preempt the State law claims set forth in the complaint. Defendant maintains that this action is governed by Federal law and cross-moves for summary judgment pursuant to Fed.R.Civ.P. 56(b).

## FACTS

In 1976 plaintiff's husband, Daniel Howard, began working for ATC, a wholly owned subsidiary of Gleason. As of January 1, 1985, Gleason entered into an agreement with the Prudential Insurance Company ("Prudential") to provide group life and long term disability insurance benefits for employees of both Gleason and its subsidiaries which included ATC.

In November 1984 a summary of that insurance plan outlining the various available options was distributed to all ATC employees. In September 1985 a 39-page plan description was given to all employees and later in March 1986 all ATC employees were given a booklet entitled "Your Employment and Benefits" which, again, outlined the various provisions of the insurance coverage offered. Mr. Howard enrolled in the ATC group insurance plan on December 3, 1984 and obtained two life

insurance policies from Prudential through Gleason's group plan. One policy was a term life insurance policy and the other was a policy for supplemental life insurance coverage with face values of $48,000 and $62,000, respectively.

On December 16, 1986, ATC sold its division (known as Alliance Tool and Die, Inc.) to J.S. Tool and Die Co., Inc. Although Howard's employment with ATC terminated at that time, he continued to work in the same capacity at the same location, without a break in service. He continued in that position for approximately one month as an employee of a temporary agency and later, as of January 15, 1987, he formally became an employee of J.S. Tool and Die Co., Inc.

In April 1987 Mr. Howard was diagnosed as having cancer and shortly thereafter died on July 11, 1987, survived by his wife and their four children.

Mrs. Howard thereafter sought to collect on the two life insurance policies but her claims were denied. The insurer based the denial on the fact that coverage had lapsed because her husband had failed to exercise his option to convert the group policies to individual policies upon his termination from ATC. Moreover, she was denied the benefit of any life insurance coverage through J.S. Tool and Die Co., Inc.[1]

Simply stated, plaintiff claims that the defendants did not properly notify her husband of his option to convert the group life insurance policies to individual policies in accordance with New York Insurance Law § 4216(d).[2] She claims that the defendants breached an affirmative duty to inform her husband of his conversion privilege and that she is, therefore, entitled to the face value of the policies, $110,000, plus interest from July 11, 1987.

## DISCUSSION

Defendants removed this action to Federal Court on the grounds that the insurance plan is an employee benefit plan governed by the ERISA, 29 U.S.C. § 1001 *et seq.* The ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that, unless expressly excepted, "the provisions of [the ERISA] ... shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." Plaintiff contends that the insurance plan at issue in this case was not an employee benefit plan within the meaning of the ERISA, and therefore, defendants improvidently removed this action to this Court and her State law claims remain valid.

In *Fort Halifax Packing, Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court distinguished between employee benefit plans and employee benefits; only the former being subject to the ERISA. The Court stated that an employee benefit plan is regulated by an ongoing administrative program in which the employer accepts responsibility for, *inter alia,* determining claimants' eligibility for benefits, computing amounts and paying benefits, and keeping records as re-

---

1. J.S. Tool and Die Co., Inc. provided $10,000 worth of life insurance coverage for its employees after they worked for six months. Mr. Howard was ineligible for such coverage because he lacked four days of having been employed by J.S. Tool and Die Co., Inc. for six months when he died.

2. New York Insurance Law § 4216(d) provides: In the event a group life insurance policy hereafter issued for delivery in this State permits a certificate holder to convert to another type of life insurance within a specified time after the happening of an event, such certificate holder shall be notified of such privilege and its duration within fifteen days before or after the happening of the event, provided that if such notice be given more than fifteen days, but less than ninety days after the happening of such event, the time allowed for the exercise of such privilege of conversion shall be extended for forty-five days after the giving of such notice. If such notice be not given within ninety days after the happening of the event, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days. Written notice by the policy holder given to the certificate holder or mailed to the certificate holder at his last known address, or written notice by the insurer mailed to the certificate holder at the last address furnished to the insurer by the policy holder, shall be deemed full compliance with the provisions of this subsection for the giving of notice.

quired by law. 482 U.S. at 9, 107 S.Ct. at 2216.

■ The Court concluded in *Fort Halifax* that a State statute compelling employers to provide one-time severance payments to its employees in the event of a plant closing did not establish an employee benefit plan for purposes of the ERISA. Plaintiff argues that, similarly, the duty to inform her husband of his conversion option was a one-time obligation to which the ERISA does not apply. I disagree with plaintiff's argument in light of the recognized "expansive sweep of the pre-emption clause," *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). The conversion option is but one small aspect of the overall insurance program offered to Gleason and Gleason's subsidiaries' employees. The group insurance plan as a whole requires ongoing oversight and administration. As such, I conclude that it is an employee benefit plan within the scope of the ERISA.

Alternatively plaintiff argues that her claim is exempted from the ERISA's provisions by virtue of the savings clause contained in 29 U.S.C. § 1144(b). That clause, in relevant part, provides that "nothing in this subchapter shall be construed to exempt or relieve any person *from any law of any state which regulates insurance,* banking, or securities." 29 U.S.C. § 1144(b)(2)(A) (emphasis added).

The Supreme Court has held that the "common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but be specifically directed toward that industry." *Pilot Life, supra*, 481 U.S. at 50, 107 S.Ct. at 1554. Moreover, the Court must assess the effect of that particular law within the meaning of "the business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.* In making that determination, the Court must evaluate whether the law transfers or spreads a policy holder's risk, whether the law relates to an integral part of the relationship between the insured and the insurer and whether the law's scope is limited to only those entities within the insurance industry. *Pilot Life, supra*, 481 U.S. at 48–49,

107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647).

■ Under the above-stated standard, New York Insurance Law § 4216(d) does not "regulate insurance" and, therefore, does not come within the ERISA's savings clause. Although the provision affects the insurance industry, however, its primary function is to define the employer's or insurer's responsibility to inform the insured of his option to convert his policy, if such an option exists. Furthermore, § 4216(d) is not within the McCarran–Ferguson Act's definition of the "business of insurance." Failure to timely notify a policyholder of the right to convert a group insurance policy to another type of policy certainly affects that policyholder's risk. However, that notification requirement does not constitute an integral part of the relationship between the insured and insurer as contemplated by the McCarran–Ferguson Act. Accordingly, I hold that New York Insurance Law § 4216(d) is not encompassed by the ERISA's savings clause.

Because the State law in this case is preempted by the ERISA and is not subject to exemption under the ERISA's savings clause, removal of this case to this Court was proper. Accordingly, plaintiff's motion to remand the action to State court is denied.

### *Defendants' Cross–Motion for Summary Judgment*

Defendants contend that they adequately informed Mr. Howard of his option to convert the group life insurance policies to individual policies in accordance with the notice requirements of the ERISA, 29 U.S.C. § 1022. Because they have fully complied with the ERISA's notice requirements, defendants maintain that an award of summary judgment is appropriate in this case.

Fed.R.Civ.P. 56 allows for summary judgment where the movant demonstrates "that there is no genuine issue as to any material fact" and that he, as a result, "is entitled to a judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of any genu-

ine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This is not to say that the movant must prove his opponent's case to be "wholly frivolous." Instead, the movant's burden "will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988).

Once the movant has satisfied its burden, his opponent must present evidence demonstrating that a genuine issue of material fact exists. It is not enough to show merely "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dister v. The Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988). In the context of a summary judgment motion, however, any inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See also, Barhold v. Rodriguez,* 863 F.2d 233, 236 (2d Cir.1988).

The judge's function, in reviewing a summary judgment motion, is to determine whether a genuine issue for trial exists, not to evaluate the credibility of the evidence presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Although not a substitute for trial, summary judgment cannot be blocked by immaterial factual disputes. *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1011–12 (2d Cir.1989).

■ Defendants contend that they adequately notified Mr. Howard, in accordance with 29 U.S.C. § 1022 [3], of the provisions of the group life insurance plan offered by Prudential to Gleason and its subsidiaries' employees. On no less than three occasions, Mr. Howard was informed in writing of the method by which he could convert his group life insurance policies to individual policies should his employment with ATC cease. First, he was notified in November 1984 in the plan description circulated to all employees prior to the plan's effective date. Thereafter he was notified of his conversion options when he was given the summary plan description (as required by 29 U.S.C. § 1022(a)(1)) in September 1985. Again, in March 1986, the employee booklet entitled "Your Employment and Benefits" distributed to all ATC employees advised of the conversion possibilities for participants in the group life insurance program. This notice was sufficient under the ERISA.

While Mr. Howard may have been confused as to his employment status at or about the time ATC's Precision Tooling and Machining Division was sold to J.S. Tool and Die, he nonetheless had been previously notified that if his employment was ter-

---

**3.** The pertinent provisions of 29 U.S.C. § 1022 are as follows:

(a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan ...

(b) The plan description and summary plan description shall contain the following information: The name and type of administration of the plan; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the admin-

istrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).

minated, he must convert his policies to individual policies or run the risk of no coverage. Group coverage would exist so long as he was a member of the group. I agree with plaintiff that it would have been a good idea for an employer to include a printed notice of an employee's conversion option with his or her final paycheck. Unfortunately, that responsibility is not mandated by the ERISA. That may be a matter for Congress to consider.

Because defendants have satisfied their burden of showing that no genuine issue for trial exists and plaintiff has failed to adequately rebut that showing, summary judgment is granted.

## CONCLUSION

Plaintiff's State law claims are preempted by the ERISA, thus defendants properly removed this action to this Court. As such, plaintiff's motion to remand to State court is denied. Because defendants acted in compliance with the notice and disclosure requisites of the ERISA, they are entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56. Plaintiff's complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.