Catherine ARTHURS, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY and the Prudential Insurance Company of America, Defendants.**

**No. 90 Civ. 4597 (RWS).**

United States District Court, S.D. New York.

April 15, 1991.

**1096**

O'Donnell & McLaughlin, Staten Island, N.Y. (Alan M. McLaughlin, of counsel), for plaintiff.

William J. Toppeta, New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendant Metropolitan Life Insurance Company ("Metropolitan") has moved for summary judgment dismissing the complaint of plaintiff Catherine Arthurs ("Arthurs"). For the following reasons, the motion is denied.

## THE PARTIES

Arthurs is the widow of Raymond Arthurs, who was, at the time of his death, employed as a splicer by the Consolidated Edison Company of New York, Inc. ("Con Ed"). Mr. Arthurs died on June 17, 1986, following his collapse while working in a Con Ed "vault" at the Port Authority Terminal in New York City.

Metropolitan is an insurance company licensed to do business in New York. Metropolitan insures a Group Life Insurance Plan ("the Plan") provided by Con Ed to its employees. Mr. Arthurs was covered by the Plan at the time of his death.

Prudential Insurance Company of America ("Prudential"), not a party to the present motion, is also an insurance company licensed to do business in New York. Prudential insured Mr. Arthurs under two individual life insurance policies.

## PRIOR PROCEEDINGS

Following her husband's death, Arthurs sought to collect on his life insurance policies and also filed a claim for workers'

compensation. Over objection from Con Ed, the Workers' Compensation Board granted her claim, finding that Mr. Arthurs "would not have died ... if he had not been working in a hot closed vault." The Board therefore concluded that he had "sustained an accident arising out of and in the course of his employment and the subsequent death was causally related."

Both insurance companies paid Arthurs the basic death benefits due to her, but refused to pay the additional accidental death benefits called for under the policies. Arthurs therefore sued the insurers in New York State Supreme Court in May 1990 for breach of the insurance contracts. Metropolitan removed the case to this Court pursuant to 28 U.S.C. § 1441(c), asserting that because Arthurs' claim against it related to an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, federal question jurisdiction existed.

On December 5, 1990, Metropolitan moved for summary judgment dismissing the complaint. Oral argument on the motion was heard on January 14, 1991.

### THE FACTS

The Summary Plan Description dated July 1984 ("the Summary"), which was distributed to covered Con Ed employees pursuant to ERISA, 29 U.S.C. § 1022, states

> In addition to any other benefits which you may receive, [accidental death or dismemberment] benefits will be paid for bodily injury sustained on or off the job while insured for this coverage and *caused solely through violent, external and accidental means* which results in death or the loss of hand, foot, or sight or eye.
>
> ....
>
> Benefits are paid when the death or loss takes place within 90 days after the injury and *is not caused in whole or in part from disease, bodily or mental infirmity,* hernia, insurrection, intentionally self-inflicted injury, or any act of war.

Summary at 4 (emphasis added).

Both parties appear to agree that Mr. Arthurs died as a result of a heart attack.

Arthurs claims that the attack was brought on by his working for several hours in the enclosed vault where the temperature exceeded 110 degrees, while Metropolitan argues that a pre-existing disease or bodily infirmity, namely coronary arteriosclerosis, was at least partially responsible for the collapse and death, which excuses it from paying the accidental death benefits.

Mr. Arthurs' death certificate contains the following entries:

> *a. Immediate cause:*
>   Occlusive coronary arteriosclerosis.
> *b. Due to or as a consequence of:*
>   Pending further study.

His autopsy report states "Coronary arteries exhibit moderate arteriosclerosis. There is a 50 to 60% stenosis of the anterior descending branch of the left coronary artery." The report concludes that the cause of death was occlusive coronary arteriosclerosis, and states that it was "natural."

In the proceedings before the Workers' Compensation Board, Con Ed relied on the opinion of Dr. Nathaniel E. Reich ("Reich"), who examined the medical file, including the death certificate and autopsy report and concluded that "It is apparent that [Mr. Arthurs] dies as a result of the natural and spontaneous progression of the coronary artery disease and his work had no effect upon his condition...." Dec. 5, 1990 Affidavit of Christine Rowlands ("Rowlands Aff.") Exhibit F at 9. Arthurs' own medical expert was Dr. Seymour S. Cutler ("Cutler"), who concurred with the medical examiner's finding that the cause of death was occlusive coronary arteriosclerosis, and stated "I believe that superimposed upon this pre-existing occlusive disease, the strenuous work activities precipitated a sudden cardiac arrhythmia which proved fatal."

### DISCUSSION

1. **Arthurs Has Stated a Claim for Relief Under ERISA.**

Metropolitan seeks to dismiss Arthurs' state law claim for breach of the

insurance contract as preempted by ERISA. While the preemption analysis is correct, the appropriate remedy is not to dismiss of the claim but rather to treat it as a claim made under ERISA. 29 U.S.C. § 1132(a)(1)(B).[1] *See, e.g., Guisti v. General Electric Co.*, 733 F.Supp. 141, 145 (N.D. N.Y.1990) (treating removed state law claim as properly stating claim under ERISA); *Howard v. Gleason Corp.*, 716 F.Supp. 740 (W.D.N.Y.1989) (preemption requires denial of motion to remand to state court, not dismissal of state law claim), *aff'd*, 901 F.2d 1154 (2d Cir.1990).

2. Metropolitan's Denial of Accidental Death Benefits Must be Reviewed De Novo.

■■■ Metropolitan asserts that its determination that Arthurs is not entitled to accidental death benefits must be reviewed under an "arbitrary and capricious" standard, while Arthurs claims that a *de novo* review is called for. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) should generally be reviewed *de novo*. However, in those cases in which the plan administrator had been granted discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the more deferential "arbitrary and capricious" standard was appropriate. 489 U.S. at 110–15, 109 S.Ct. at 953–56. Although the Court did not explicitly deal with the standard of proof required, its use of the *de novo* standard as the default, together with its citation of ERISA's purpose "to promote the interests of employees and their beneficiaries" and "to protect contractually defined benefits," 489 U.S. at 113, 109 S.Ct. at 955 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983) and *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985)), implies that in

order to qualify for the more deferential standard, a plan administrator bears the burden of establishing that it does wield discretionary authority over benefits decisions. *See Moon v. American Home Assurance Co.*, 888 F.2d 86, 88–89 (11th Cir. 1989); *Baxter v. Lynn*, 886 F.2d 182, 187 (8th Cir.1989); *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989). In making this determination, any ambiguities must be construed against the administrator and in favor of the party seeking judicial review, particularly in a situation (such as the present one) where the plan administrator is also the party responsible for paying the benefits at issue. *Guisti, supra*, 733 F.Supp. at 141; *cf. Firestone*, 489 U.S. at 115, 109 S.Ct. at 956 (conflict of interest of plan administrator may be relevant to determining whether abuse of discretion exists).

Metropolitan has not pointed to any language in the Summary to supports its position. The portion of the Summary cited in support of its claim to discretionary authority reads

*How to File Claims*

All claim forms needed to file for benefits under the Group Insurance program can be obtained from Benefits Planning and Administration, Room 947–S, 4 Irving Place, who will also be ready to answer questions about the insurance benefits and to assist in filing claims.

The completed claim form should be returned to Benefits Planning and Administration, who will certify coverage under the plan and will then forward the claim form to the Metropolitan Life Insurance Company.

If any benefits are denied a written explanation will be provided.

Summary at 6. Nothing in this section grants Metropolitan discretionary authority to rule on eligibility for benefits. On the other hand, the section cited earlier providing for accidental death benefits states that such benefits "will be paid," with no re-

---

**1.** § 1132. *Civil Enforcement*

   (a) *Persons empowered to bring a civil action*
   A civil action may be brought—
     (1) by a participant or beneficiary—

   . . . .

     (B) to recover benefits due to him under the terms of his plan. . . .

quirement that Metropolitan must agree to the payment. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 908 (2d Cir.1990) (no grant of discretion where plan summary provided "you *will* receive severance" and "benefits *are* payable") (emphasis in *Heidgerd*).

Metropolitan has supported its claim to discretionary authority by referring to the review process by which it handled Arthurs' claim, which it asserts is the typical way in which such claims are handled. However, this purported review process merely consisted of denying the claim and informing Arthurs that she had a right to appeal the decision to Metropolitan, a right which Arthurs declined to exercise, choosing to file suit instead. Metropolitan has offered no evidence that this "review process" is authorized by or even contemplated by the Plan itself.[2]

The section of the Summary identified as "Statement of ERISA Rights" states: "If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." This statement fails to imply any discretion in Metropolitan's payment of benefits.

Therefore, Metropolitan's denial of accidental death benefits must be analyzed under a *de novo* standard of review.

### 3. There Are Factual Disputes Which Preclude Summary Judgment.

#### A. Standard for summary judgment

The standards for summary judgment are well-known. The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original).

In a case such as the present one, in which some factual disputes exist, the first step is to identify the substantive law governing the case, then to determine whether any of the disputed facts is material.

#### B. Applicable law

"Given [the] language and history [of ERISA,] we have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone*, 489 U.S. at 110, 109 S.Ct. at 954 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). Metropolitan's denial of accidental death benefits to Arthurs must be reviewed under principles of this federal common law.

■ Although the questions presented here—what constitutes an accident for the purposes of a double indemnity clause and whether a pre-existing health condition should prevent an insured from recovering accidental death benefits—have for years been the subject of litigation in numerous state courts, *see, e.g., Graves v. Travelers Ins. Co.*, 66 Wis.2d 124, 224 N.W.2d 398 (1974); *Salisbury v. John Hancock Mutual Life Ins. Co.*, 259 Or. 453, 486 P.2d 1279 (1971); *Slobojan v. Western Travelers Life Ins. Co.*, 70 Cal.2d 432, 74 Cal.Rptr. 895, 450 P.2d 271 (1969) (in bank); *Mutual Life Ins. Co. of New York v. Smith*, 248 Miss. 448, 160 So.2d 203 (1964); *Brown v. Metropolitan Life Ins. Co.*, 327 S.W.2d 252 (Mo. 1959) (en banc); *Silverstein v. Metropolitan Life Ins. Co.*, 254 N.Y. 81, 171 N.E. 914 (1930) (all awarding accidental death bene-

---

**2.** Metropolitan has not provided a copy of the Plan itself, as opposed to the Summary. In any event, *Heidgerd* provides that the Summary, as the document actually distributed to the employees pursuant to ERISA, is the controlling document, and the Summary grants no discretionary authority to Metropolitan.

fits); *Metropolitan Life Ins. Co. v. Smith,* 554 S.W.2d 123 (Tenn.1977); *Merrick v. Metropolitan Life Ins. Co.,* 88 Nev. 327, 497 P.2d 890 (1972); *Union Central Life Ins. Co. v. Scott,* 286 Ala. 10, 236 So.2d 328 (1970); *Neeman v. John Hancock Mutual Life Ins. Co.,* 182 Neb. 144, 153 N.W.2d 448 (1967); *Horn v. Protective Life Ins. Co.,* 265 N.C. 157, 143 S.E.2d 70 (1965); *Jackson v. Southland Life Ins. Co.,* 239 Ark. 576, 393 S.W.2d 233 (1965); *Venable v. Aetna Life Ins. Co.,* 174 Ohio St. 366, 189 N.E.2d 138 (1963); *Pan American Life Ins. Co. v. Andrews,* 161 Tex. 391, 340 S.W.2d 787 (1960); *Miller v. Prudential Ins. Co.,* 183 Kan. 667, 331 P.2d 310 (1958); *Prudential Ins. Co. v. Kellar,* 213 Ga. 453, 99 S.E.2d 823 (1957); *Berg v. New York Life Ins. Co.,* 88 So.2d 915 (Fla.1956); *Bergeron v. Prudential Ins. Co.,* 96 N.H. 304, 75 A.2d 709 (1950) (all denying benefits), there are few cases dealing with the issues under federal common law. In *Adkins v. Reliance Standard Life Ins. Co.,* 917 F.2d 794, 796 (4th Cir.1990), the court commented

> Promoting the interests of employees and the beneficiaries does not seem to us to mean, as is so frequently said, that the purpose of legislation is corrective and it must be liberally construed in favor of the beneficiary. The *[Firestone]* Court could have said just that if it desired.... Just as importantly, however, we do not feel that [the Court's] language calls for an overly literal compliance with those decisions most favorable to a finding [against the claimant]. After all, as at least some of the authority has noted, in order to recover under such policies as the one here involved, and with such a stringent construction, a claimant would have to be in perfect health at the time of his most recent injury before the policy would benefit him, and that, of course, is a condition hardly obtained, however devoutly to be wished.

After analyzing the various possible interpretations, the court concluded

> We think a better solution is to take a middle ground as has been taken by Kentucky in *Colonial Life & Accident Ins. Co. v. Weartz,* 636 S.W.2d 891 (Ky.Ct.App.1982).... It [stated] the rule in such cases as follows:

>> [A] pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss.... [A] "pre-disposition" or "susceptibility" to injury, whether it results from congenital weakness or from previous illness or injury, does not necessarily amount to a substantial contributing cause. A mere "relationship" of undetermined degree is not enough.

> 636 S.W.2d at 894.... We think [this rule] gives effect to the *[Firestone]* Court's admonition to promote the interests of the employees and beneficiaries in employee benefit plans.

*Id.* at 797 (citing *Firestone,* 489 U.S. at 110–14, 109 S.Ct. at 953–56). Similarly, in *Guisti, supra,* the court stated that "not every disease or medical condition which hypothetically contributes to a death is considered a disease which 'causes or contributes' to a death for the purposes of making an ERISA benefits determination." 733 F.Supp. at 149.

The rule to be applied, therefore, is similar to that enunciated by the New York Court of Appeals in *Silverstein, supra:*

> "If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state."

254 N.Y. at 85, 171 N.E. at 914 (quoting from *Leland v. Order of United Comm. Travelers of Amer.,* 233 Mass. 558, 564, 124 N.E. 517, 520 (1919)).

*C. Application to the present dispute*

■ In view of the foregoing discussion, there are factual disputes which preclude summary judgment.[3] Arthurs has present-

---

**3.** In view of the fact that both parties have

presented some evidence bearing on the dispute,

ed some evidence to show that her husband's fatal heart attack was brought on by the extremely high temperature in the confined space of the vault, and that those conditions were not the usual conditions under which he was expected to work. More significantly, Metropolitan—the moving party—has failed to offer any evidence to establish that the phrase "occlusive coronary arteriosclerosis" as used in both the autopsy report and the death certificate necessarily signifies that Mr. Arthurs' death was in fact due to a pre-existing disease or bodily infirmity. While the term "arteriosclerosis" may be familiar to many people in this day and age, a court cannot simply apply its own layperson's interpretation of the condition when the term is used by a medical expert in the context of a professional opinion. *See also McNamee v. Metropolitan Life Ins. Co.*, 137 N.J.L. 709, 61 A.2d 271 (1948) (death certificate reference to "cardiac disease" of doubtful weight where physician who signed certificate had no knowledge of decedent or circumstances surrounding death). Thus, Metropolitan has not met its burden of showing the absence of a triable issue of fact concerning the relationship, if any, between Mr. Arthurs' possible heart condition and his death.

## CONCLUSION

Under *Firestone* and its progeny, Metropolitan's denial of accidental death benefits to Arthurs must be reviewed *de novo*. Because a genuine issue of material fact exists, Metropolitan's motion for summary judgment is denied.

It is so ordered.

it is not necessary at this time to determine which party bears the burden of proof on the issues presented here. However, in the interests of helping the parties prepare for trial, the fairest allocation of burden appears to be that described in *Kasper v. Provident Life Ins. Co.*, 285 N.W.2d 548 (N.D.1979), *Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1023 (5th Cir.1978) (ap-

plying Mississippi law), and *Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 160 S.E.2d 523 (1968), under which the beneficiary must prove that the death resulted from accidental means, while the insurer bears the burden of establishing the existence of a disease bringing the death within the exception to the accidental death clause.